My name is Jan Joseph Behar, and I represent Mr. Gabriel Benavides-Pina. I would like to reserve a couple of minutes for your response. Mr. Earnest, I think that the first item I'm being forced to address is the 28J letter that was just submitted a couple of days ago by a government counsel. I received it yesterday afternoon and responded to it. I believe a copy of my letter has been submitted to you, although I have the original has been sent to the Court by FedEx. We've not had an opportunity to review that, as you can imagine, but we just did receive it. And I apologize, but I got it yesterday, so. I understand. With that said, I think the first point is that Federal Rule 28J says that a party may promptly advise. This case has been pending for a number of years. Promptly does not, in my book, mean the day before the hearing. Mean that they what? Your voice dropped. It says promptly advise. In my book, promptly advise does not mean the day before the oral argument. We can assure you, counsel, that your case will not be decided one way or another based upon what's in the 28J letter. Thank you. Why don't you go ahead with the substance of the arguments, and we'll be grateful for that. Thank you, Your Honor. I think we start with the proposition that an alien in deportation proceedings is entitled to a neutral finder of fact to adjudicate his case. This Court found in Sanchez Cruz v. Immigration Service that a neutral judge is one of the most basic due process protections. Mr. Benavides was convicted in 1993 on a plea of guilty of possession of a controlled substance for sale. In 1995, he was subsequently convicted by a jury of transportation or sale of a controlled substance. And therein lies the crux of this case. During that proceeding, he always maintained his innocence. He had an opportunity to seek a deal with the prosecutor's office. He didn't do that. He maintained his innocence, went to trial, lost, paid for it. Has never said he was not convicted. He has always maintained that he was innocent. In Reyes-Melendez, which is a case out of this Court, the immigration judge took over the direct examination of the respondent and accused him of moral impropriety based on what she believed were improper relationships that the gentleman had with his children's mother. This Court found that the Court indisputably demonstrates that the judge was hostile towards Mr. Reyes-Melendez and judged his behavior as being morally bankrupt. The Court concluded, as was the case in Colmenar, that the judge had not acted as a neutral fact finder, but was a partisan adjudicator seeking to intimidate. Well, counsel, that's all well and good with respect to the other case. But in your case, what can you point to as evidence that this was not a neutral facts finder? Your Honor, the main fact is that the judge became extremely irritated with my client when he said two things. One, I was convicted improperly. I did not engage in that conduct. I went to trial because I was not guilty. I was found guilty. I live with it. I served three years in prison. I live with it. And the judge said, how can you say you're not guilty? You were found guilty by a jury. He says, what made you be found guilty? He says, the DEA agent in my case lied. The judge became incensed when the Respondent said that the DEA agent had lied. And he put the burden on the Respondent to prove that the agent had lied. He said, what evidence do you have that the agent lied? Simple question, rhetorical question is, if we had the evidence that the agent lied, would we be here today? Now, this is of particular importance because if my client had simply gone to court and admitted that he was guilty, that he had engaged in the conduct, he still would have been eligible for the 212c waiver, and he would not have incurred the wrath of the judge and probably would have found been found more likely to have deserved the relief. You bear the burden here, don't you, Counsel? We bear the burden, Your Honor. Are you talking about indiscretion? No, I'm showing that this is anything other than a neutral fact finder. You have a very heavy burden, I believe, that if you're going to try to overturn what was done here based upon the fact that the IJ was beyond the pale, as far as actions, you have a burden to show that his conduct was such that your client was denied due process. Isn't that correct? Yes, Your Honor. And what you've described thus far is almost a standard occurrence in almost every court where someone is arguing a point of law, and it may be said in a way that irritates the judge, but that doesn't mean that the judge, based upon the record we have here, was outside the normal range of what a neutral fact finder would do. Especially in a record where everything, so far as your client is concerned, was somebody else's fault. Your Honor, that's — His lawyer told him to lie. That's why he lied. That is actually not a — Isn't that what the record shows? No, Your Honor, the — The record doesn't show that he said his lawyer told him to lie? What the record shows is that when he immigrated, he was 21 years old, I believe. No, no, no. Does the record show that he says his lawyer told him to lie, and that's why he lied? The record shows — Either it does or it doesn't. Tell me. If I may respond, Your Honor, my reading of the record, and I was there during the trial, was that the judge asked him, did the lawyer tell you — are you saying that the lawyer told you to lie? And he said it was actually a notary. Advised me that if I said I was married, I wouldn't get in and I should say I was not married. Now, he's not saying I lied because he told me. He's saying I was told to say I was unmarried. But that was a very long time ago. He was 21 years old at the time, or 22 years old. He's probably close to 50 today, 48. All I'm saying is on this record, your client blamed somebody for everything that he did. Your Honor, he has two drug convictions. In the first drug conviction, he accepted full responsibility, said what he did, no arguing. In the second conviction, he said, I went to trial. And I think the facts speak louder than anything else. Why would a person go to trial if he had an opportunity to make a deal and get less time in custody? The point is he did go to trial. He maintained his innocence. He's entitled to maintain his innocence. So he goes to trial. But as a matter of law counsel, what relevance does that have to the actions of the I.J.? The I.J. looks at the record, right? Yes. And the record shows the two convictions. The fact that your client feels that he was innocent. I mean, I'm very sorry for him. And if he had an improper conviction, that's the worst thing we can have in our system. But the fact is that the I.J. has to rely on the record. And based upon the record, what your client was saying was nonsense. Your Honor, the judge has to rely on the record. My client never denied that the record shows that he was convicted. He simply said, I didn't do it. But I recognize that I was convicted. I'm not arguing it. The point is that on direct examination, the judge interrupted and said, I am not about to retry the criminal case. Yet on cross-examination, he allows a prosecutor full reign to go ahead and ask whatever she wants. Later, when the rule was made. Counsel, why don't you hold that good thought, and let's hear from the government, and then you come back and give us your rebuttal. Very well. Thank you. Who's going to make the presentation for the government? Your Honor, CMS. Okay. Very good. Good morning, Your Honors. Well, I guess I'll just follow up on that last point. I don't think that the I.J. interrupted direct. The record shows that the I.J. was actually asking questions as a follow-up to two pages of letting Mr. Benavides talk about the 1995 conviction. And then the judge, I guess, interrupted himself and said, I don't really want to  I'm not going to retry this case. And then followed up by asking Mr. Benavides, well, you were found guilty by a jury, and did you appeal? No, I didn't appeal. And that was it. I didn't see any hostility in any of the questions there. Certainly, there was a focus on this claim by Mr. Benavides that the DEA agent had lied, and that was something that the I.J. then followed up with the remaining witnesses, the two daughters, asking if the father had ever talked to them about that basically would have been the crucial turning point in his trial, the reason that he was found guilty, because a DEA agent allegedly lies. And in both cases, the daughter said no, that the father had never said that to them. And so that had to do with his finding about lack of closeness with the family. And certainly, I think the record does show that he blamed the attorney. I think on page 114, I call it with the immigration judge. And as I mentioned in my brief, failure to admit responsibility for his involvement in the 1991 arrest and the 1993 crime. Is there anything, counsel, that you want to bring to the court that's not set forth in your brief? No, Your Honor. I believe it's all there. I mean, my 28-J letter did raise a couple of jurisdictional questions, which the court that's the court's decision on jurisdiction, but I've raised a couple of things that I realized when I was reviewing the record given the change in the law in 1995. You can assume that all of us have read the briefs and are familiar with them. Do any of my colleagues have any questions? Do you have anything further you want to add then? No, thank you, Your Honor. Okay, thank you. We'll have your rebuttal then, please. Thank you, Your Honor. The question was whether the – how was the judge biased. Your Honor, the – Well, how does the record show it? How does the record show it? Well, an immigration judge is entitled to ask questions for purposes of clarification. He's not entitled to prosecute. He crosses that line and becomes a non-neutral fact finder when he starts prosecuting the case. And the best place that I can point to is the questioning by the judge of my client's wife and of my client's daughter. In the case of my client's wife, the record shows that the judge, the prosecutor questioned my client's wife for four pages. The judge questioned her for 18 pages. That's 450 percent more than the prosecutor. It's the prosecutor's job to prosecute and to ask on cross-examination. It's not the judge's job. He's there to adjudicate the case. But doesn't the judge have to determine whether your client is credible? He does, Your Honor. But by prosecuting, he's not determined. Did your client say how close he was to his family and what he had done and what he hadn't done? He did say he was close to his family. And then the court wanted to verify, is he or is he not? Isn't that what this record shows? Your Honor, I don't think that by asking a person, did you tell your daughters that you were convicted of X, Y, and Z, that makes you close or not close to your family. That's not how you measure whether a person is close to one's family or not. I – all of us have done bad things in our lives, I'm sure. I don't go boasting to my children of all the things that I've done when I was a child. No. I was responding to your suggestion of how many pages he did it. He – I assume he was trying to establish either that your client was right, that he was close, or he was not. If you look at the tone of the questioning, it is – that is not – that's not what the record shows. What was he doing? Sorry? What was he doing? He was questioning the – for example, he put words in the girl's mouth. You believe it's the government's fault that your father went to jail. Why? Because she said, I believe he was innocent. My father told me that he didn't do it. Did your father tell you he did it? No, he didn't. So therefore, you believe that it's the government's fault that your dad went to jail. That's putting words in her mouth. That doesn't show neutrality. That shows very clearly an effort to try to put words in somebody's mouth. That's not his job. His job is to listen to the testimony and to make an evaluation. I don't think that in this case he was open-minded. Any other questions, members of the panel? Thank you. Thank you very much. This case of Benevides-Pena v. Mukasey is submitted. We will next hear argument in Markle v. Mukasey. Thank you. Good morning. You may proceed.
judges: Farris, M. Smith, Sandoval